[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Paris,* **Slip Opinion No. 2016-Ohio-5581.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5581

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* PARIS.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Paris,* **Slip Opinion No. 2016-Ohio-5581.**]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct— Conditionally stayed six-month suspension.*

(No. 2015-2009—Submitted February 24, 2016—Decided August 31, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-005.

_____

**Per Curiam.**

{¶ 1} Respondent, Tasso Paris of Cleveland, Ohio, Attorney Registration No. 0038609, was admitted to the practice of law in Ohio in 1987.

{¶ 2} In a January 2015 complaint, relator, Cleveland Metropolitan Bar Association, alleged that Paris violated multiple Rules of Professional Conduct by

making unwelcome sexual advances toward a female client and failing to appear at her criminal-sentencing hearing.

{¶ 3} The parties entered into stipulations of fact, misconduct, and aggravating and mitigating factors and jointly recommended that Paris be suspended from the practice of law for six months, all stayed on the condition that he engage in no further misconduct. A panel of the Board of Professional Conduct conducted a hearing at which it admitted stipulations submitted by the parties and heard testimony from Paris and the affected client. The panel largely adopted the stipulations, but, noting that Paris's testimony contradicted some of those stipulations, also found that he failed to understand and acknowledge the wrongful nature of his conduct. The panel therefore rejected the sanction suggested by the parties and recommended that Paris serve a six-month actual suspension from the practice of law in Ohio. The board adopted the panel's report in its entirety.

{¶ 4} Paris objects to the board's finding of an additional aggravating factor to which the parties had not stipulated. He also argues that given the parties' comprehensive stipulations and the limited nature of the testimony given before the panel, this court should reject the sanction recommended by the panel and adopt the stipulated sanction of the parties. We adopt the board's findings of fact and misconduct but sustain Paris's objections and suspend him from the practice of law in Ohio for six months, all stayed on conditions.

**Misconduct**

{¶ 5} Following an automobile accident that occurred on March 17, 2013, a woman hired Paris to defend her in the Cleveland Municipal Court against charges of driving under the influence and driving under suspension, and her fiancé paid him $1,000. Paris stipulated that he referred to her as his "beautiful Irish girl" but testified that he had referred to her as "a red haired Irish girl, coming out of an Irish bar, in Cleveland, Ohio, on March 17th" only in the context of explaining that no one was going to believe her claim that she had had only one drink before her St.

Patrick's Day automobile accident. Paris also stipulated that during the course of his representation, he asked his client to go out with him several times and invited her to his house to join him in his hot tub on more than one occasion. Although he never denied the truth of that stipulation, he also testified that the client's fiancé was present at all but one of their meetings.

{¶ 6} Paris stipulated that his client was afraid to do anything about his conduct out of fear that it would affect his representation. The client testified that his conduct made her uncomfortable but that she never told him that she would not go out with him. Instead, she attempted to avoid the issue by saying, "[W]e'll see" or "We will talk about it." The client and her fiancé discussed her concerns on several occasions and agreed that she would just go out with Paris so that he would do a better job representing her, but she could not bring herself to go through with it. She testified that as the case dragged on, however, she would have done "whatever he want[ed]" to get it resolved.

{¶ 7} On August 6, 2013, the client pleaded guilty to driving while under suspension and failure to maintain reasonable control of her vehicle and was ordered to appear at a later date for sentencing. Paris stipulated that he not only failed to attend the sentencing hearing but that he also failed to notify the client of his absence and to request that another attorney attend the hearing on his behalf. At the panel hearing, Paris acknowledged that stipulation and confirmed its truth. He testified, however, that he had asked his father to attend the client's sentencing hearing and that upon returning to the office after the hearing, his father reported that the case had been "sent to another judge." Paris's father was not called as a witness, but he represented Paris before the panel. During his closing argument, he stated that he attended the sentencing hearing at Paris's request. But the parties had stipulated—and the client's testimony confirmed—that when the judge asked her whether she was represented by counsel, she responded that Paris had failed to

appear and that she did not expect him to because "[h]e's be[en] doing nothing but trying to get in my pants."

{¶ 8} Based on the client's statement, the judge vacated the client's plea and recused herself from the case. The case was reassigned, and a public defender was appointed to represent the client. The client ultimately pleaded guilty to operating an unsafe vehicle and was fined $200. She later filed a grievance against Paris.

{¶ 9} The board adopted the parties' stipulations and agreed that Paris's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the lawyer-client relationship).[1]

### Recommended Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, relevant aggravating and mitigating circumstances, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

{¶ 11} The board adopted the parties' stipulation that Paris has no prior disciplinary record and cooperated with relator's investigation. *See* Gov.Bar R. V(13)(C)(1) and (4). It also noted that Paris did not present evidence of any other mitigating factors.

{¶ 12} In addition to adopting the parties' stipulated aggravating factors—that Paris acted with a selfish motive and engaged in multiple offenses—the board found that Paris's conduct harmed a vulnerable client. *See* Gov.Bar R. V(13)(B)(2), (4), and (8). The board also found that Paris did not understand or accept the wrongful nature of his conduct based on testimony in which he (1) asked why the client referred a female friend to him after terminating his representation if he was

---

[1] In accordance with the parties' stipulations, the panel unanimously dismissed two additional alleged violations of the Rules of Professional Conduct.

"hitting on" her, (2) stated that the client's fiancé was present during all but one of their meetings, (3) claimed that he merely referred to the client as a "red haired Irish girl"—and only when explaining that no one was going to believe her claim that she had had only one drink before her St. Patrick's Day automobile accident, and (4) claimed that his father had attended the client's sentencing hearing. *See* Gov.Bar R. V(13)(B)(7). While noting that relator offered no evidence that Paris engaged in a pattern of misconduct, the board also commented that "there is likewise no evidence to assure the panel that it was an isolated event that is unlikely to reoccur." *See* Gov.Bar R. V(13)(B)(3) (providing that a pattern of misconduct is an aggravating factor that may be considered in favor of recommending a more severe sanction).

{¶ 13} The parties jointly recommend that Paris be suspended for six months but that the suspension be stayed in its entirety on the condition that he engage in no further misconduct. In support of that sanction, the parties cited *Disciplinary Counsel v. Hubbell*, 144 Ohio St.3d 334, 2015-Ohio-3426, 43 N.E.3d 397 (imposing a conditionally stayed six-month suspension on an attorney who attempted to initiate a romantic relationship with a client whom he represented, pro bono, in a custody dispute), and *Disciplinary Counsel v. Quatman*, 108 Ohio St.3d 389, 2006-Ohio-1196, 843 N.E.2d 1205 (imposing a conditionally stayed one-year suspension on an attorney who put his hands on a client's breasts for several seconds and told her that they were "very nice").

{¶ 14} Noting the increasing frequency of cases involving repeated and unwelcome solicitation of clients for sexual activity, the board, however, urges us to hold that in the absence of significant mitigating factors, this court will impose an actual suspension on attorneys who have engaged in such conduct—as we do in cases involving attorneys who have engaged in a material misrepresentation to a court or have engaged in a pattern of dishonesty with a client. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995) (creating

a presumption that an attorney who has engaged in a course of conduct involving dishonesty, fraud, deceit, or misrepresentation will receive an actual suspension). *But see Dayton Bar Assn. v. Kinney*, 89 Ohio St.3d 77, 78, 728 N.E.2d 1052 (2000) (recognizing that mitigating factors may justify a lesser sanction in some cases involving attorney dishonesty).

{¶ 15} In accordance with this suggested presumption and in light of Paris's repeated and unwelcome solicitation of his client, his failure to appear for her sentencing hearing after she rebuffed his advances, his failure to acknowledge the wrongful nature of his conduct, and the absence of additional mitigating evidence, the board recommends that we suspend Paris from the practice of law for six months with no stay.

### Paris's Objections

{¶ 16} In his objections to the board's report and recommendation, Paris urges us to reject the board's finding of the additional aggravating factor that Paris failed to accept the wrongful nature of his conduct. He also challenges the board's recommended sanction and urges us to adopt the parties' stipulated sanction of a fully stayed six-month suspension.

{¶ 17} We agree that Paris did not plainly acknowledge the wrongful nature of his conduct or make a particularly strong showing of remorse at the panel hearing. But we also note that despite the intention of the parties to submit the case entirely upon their stipulations, the panel sought to hear testimony not only from Paris but also from the grievant. This created some confusion regarding the scope of the evidence to be presented at the hearing. It also resulted in the inadvertent admission of testimony that touched upon stipulated issues. Although relator and the panel chairperson expressed that it was their intention to rely on the stipulations rather than the testimony in those instances, there is a possibility that some of Paris's contradictory testimony was offered to rebut portions of the grievant's testimony on those stipulated issues. Therefore, in the interest of fairness, we

decline to adopt additional aggravating factors based on that testimony.  Moreover, in light of Paris's nearly 30 years of practice with no disciplinary record prior to this incident, we are inclined to agree that there is some evidence that his behavior in this matter is an isolated incident.

{¶ 18} We have consistently disapproved of the conduct of lawyers who have solicited or engaged in sexual activity with their clients even before the adoption of Prof.Cond.R. 1.8(j), and depending on the relative impropriety of the situation, we have imposed a wide range of disciplinary measures for such conduct. *Akron Bar Assn. v. Miller*, 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359, ¶ 18.  We have publicly reprimanded attorneys who have commenced consensual sexual relationships with their clients that have not compromised the clients' interests.  *See*, *e.g.*, *Disciplinary Counsel v. Engler*, 110 Ohio St.3d 138, 2006-Ohio-3824, 851 N.E.2d 502 (publicly reprimanding an attorney who had two consensual sexual encounters with a client while representing her in a divorce).  On the other end of the spectrum, we have disbarred an attorney who solicited sex from clients in exchange for a reduced legal fee, made inappropriate sexual comments to clients, touched them in a sexual manner, exposed himself to a client, and lied repeatedly during the disciplinary process.  *Disciplinary Counsel v. Sturgeon*, 111 Ohio St.3d 285, 2006-Ohio-5708, 855 N.E.2d 1221.

{¶ 19} In between those two extremes, we typically impose term suspensions with all or part of the suspension stayed, depending on the severity of the misconduct and the applicable aggravating and mitigating factors.  *Disciplinary Counsel v. Bunstine*, 136 Ohio St.3d 276, 2013-Ohio-3681, 995 N.E.2d 184, ¶ 32.  *See also Toledo Bar Assn. v. Burkholder*, 109 Ohio St.3d 443, 2006-Ohio-2817, 848 N.E.2d 840 (imposing a conditionally stayed six-month suspension on an attorney who relentlessly asked a client out on dates, inappropriately touched her, and made a sexual comment to her); *Disciplinary Counsel v. Freeman*, 106 Ohio St.3d 334, 2005-Ohio-5142, 835 N.E.2d 26 (imposing a six-month actual

suspension on an attorney who paid a young client for photographs of herself in various states of undress and requested photographs of her in the nude and sex acts from her in exchange for money after the attorney-client relationship ended); *Akron Bar Assn. v. Miller*, 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359 (imposing a conditionally stayed six-month suspension and monitored probation on an attorney who asked a client about her breast size, asked her to show him her breasts as a reward for the work he was performing on her behalf, and suggested that she perform oral sex on him—all during a period when he was not taking medication prescribed for his depression and attention-deficit disorder); *Bunstine* (imposing a conditionally stayed one-year suspension on an attorney who, in his second disciplinary matter, solicited sex from a client in lieu of payment for his fees).

{¶ 20} We by no means condone Paris's conduct in this matter, but on the stipulated facts before us, we find that his actions are most comparable to cases in which we have imposed fully stayed suspensions. Therefore, we sustain Paris's objection to the board's recommended sanction and find that a six-month suspension, stayed on conditions, is the appropriate sanction for his misconduct.

{¶ 21} Accordingly, Tasso Paris is suspended from the practice of law for six months, all stayed on the conditions that he make full restitution of $1,000 to the affected client[2] and engage in no further misconduct. If Paris fails to comply with the conditions of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Paris.

Judgment accordingly.

PFEIFER, O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

KENNEDY, J., concurs, with an opinion.

LANZINGER, J., dissents, with an opinion joined by O'CONNOR, C.J., and O'NEILL, J.

---

[2] Paris stipulated that he was willing to refund the affected client's entire fee of $1,000. At oral argument, however, his counsel stated that the refund had not yet been made.

_____

**KENNEDY, J., concurring.**

{¶ 22} I agree with the majority that a six-month suspension, stayed on conditions, is the appropriate sanction for the misconduct of respondent, Tasso Paris. The majority opinion tacitly rejects the board's request that we adopt a new presumption that in the absence of significant mitigating factors, the court will impose an actual suspension for the repeated and unwelcome solicitation of vulnerable clients for sexual activity. The dissenting opinion argues in favor of adopting this presumption. I write separately to squarely address whether it is this court's role to create a new presumption in favor of an actual suspension in lieu of our deeply rooted process of determining the appropriate sanction in each individual case.

{¶ 23} Gov.Bar R. V(13) imposes a duty on the Board of Professional Conduct to examine the unique facts and circumstances of each disciplinary case, the aggravating and mitigating factors applicable to the individual attorney, and his or her life circumstances, in order to determine the appropriate sanction for that particular attorney. Therefore, the establishment of a presumption of an actual suspension would be antithetical to our rules.

{¶ 24} In 1995, this court established a presumption of an actual suspension in cases with misconduct involving dishonesty, fraud, deceit, or misrepresentation, absent mitigating factors justifying a stay. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 658 N.E.2d 237 (1995). A majority of the court in *Fowerbaugh* reasoned that a presumption was warranted for conduct by an attorney involving deception, falsehood, or fraud because "[s]uch conduct strikes at the very core of a lawyer's relationship with the court and with the client. Respect for our profession is diminished with every deceitful act of a lawyer." *Id.* at 190.

**{¶ 25}** In my view, however, deception and fraud are not the only types of misconduct that strike at the core of a lawyer's relationship with the court and with the client. Instead, every act of misconduct does so and diminishes the honor and nobility of our great profession. But, to echo the views expressed in Justice Resnick's separate opinion in *Fowerbaugh*:

> It is the responsibility of this court to give guidance as to what conduct constitutes a violation of the Disciplinary Rules. It is not the province of this court to use syllabus law to mandate a particular sanction once a violation has been found. The sanction in each individual's case should be determined based upon the unique facts and circumstances of that case.

*Id.* at 191 (Resnick, J., concurring in judgment only).

**{¶ 26}** Without question, inappropriate sexual conduct by an attorney toward his or her client undermines the attorney-client relationship and diminishes respect for our profession. However, if we were to adopt a presumption of an actual suspension for this category of misconduct based on the reasoning advanced by the majority in *Fowerbaugh*, why not extend this approach and establish a similar presumption for any and all cases involving violations that undermine the attorney-client relationship and diminish respect for our profession? Adoption of the proposed presumption in this case would move us closer to a reality in which the "exception swallows the rule."

**{¶ 27}** Gov.Bar R. V(2)(A) provides that "[e]xcept as otherwise expressly provided in rules adopted by the Supreme Court, all grievances involving alleged misconduct by * * * attorneys * * * shall be brought, conducted, and disposed of in accordance with the provisions of this rule." This provision applies to all of Gov.Bar R. V, including Gov.Bar R. V(13). Presuming an actual suspension would

fundamentally transform our well-established individualized process of attorney discipline into a formulaic "one size fits all" system. This philosophical shift should be carried out, if ever, only pursuant to this court's longstanding rulemaking process, not through judicial fiat. It is for the members of the legal community—guided by the principle that the primary purpose of the disciplinary process is not to punish the offender but to " 'protect the public against members of the bar who are unworthy of the trust and confidence essential to the relationship of attorney and client,' " *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10, quoting *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 100, 322 N.E.2d 665 (1975)—to debate whether it would be appropriate to establish a presumption of an actual suspension.

**{¶ 28}** Accordingly, I respectfully concur.

_____

**LANZINGER, J., dissenting.**

**{¶ 29}** This court has been asked to consider establishing a presumption that in the absence of significant mitigating factors, we will impose an actual suspension on attorneys who engage in the repeated and unwelcome solicitation of vulnerable clients for sexual activity. We already presume that an actual suspension will be the sanction for behavior involving dishonesty, fraud, deceit, or misrepresentation, unless mitigating factors justify a stay. *See Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St.3d 187, 190, 658 N.E.2d 237 (1995). I believe that the same type of sanction should be imposed upon respondents like Tasso Paris, especially because it appears that cases of this type are increasing.

**{¶ 30}** In my view, this court should do more than merely express disapproval of the attorney's actions by imposing a stayed suspension. The extent of the mitigation is that he has no previous discipline and has cooperated with the investigation. On the other hand, he stipulated that he acted with a selfish motive and engaged in multiple offenses. In addition, the board found that he did not

understand or accept the wrongful nature of his actions and so failed to show that his misconduct was unlikely to recur. Most importantly, the client was harmed when Paris did not appear for her sentencing, which she attributed to her rebuffing his sexual advances.

{¶ 31} I respectfully dissent from the court's judgment with respect to the sanction in this case. I would adopt the recommendation of both the panel and the board and would suspend Paris from the practice of law for a period of six months.

O'CONNOR, C.J., and O'NEILL, J., concur in the foregoing opinion.

_____

Thomas L. Anastos; Ulmer & Berne, L.L.P., and Corey N. Thrush; and Heather M. Zirke, Bar Counsel, for relator.

Thomas Paris and John T. Paris, for respondent.

_____